IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TYRONE PETTIES (N-52785), | )<br>) |
| Plaintiff, | )<br>) Case No. 16-cv-7929 |
| v. | )<br>) Judge Robert M. Dow, Jr. |
| WENDY DYBAS, et al., | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' summary judgment motion [78] and Plaintiff's motion for status update [96] requesting an update on the Court's ruling. For the reasons set forth below, Defendants' motion for summary judgment [78] is granted in part and denied in part. Summary judgment is entered in favor of Defendants Utke, Kits, and Tomaras. Summary judgment is denied as to Defendant Dybas. Plaintiff's motion for status update [96] is stricken as moot in light of this order. The case is set for further status on September 6, 2018 at 10:00 a.m. Counsel for Defendant Dybas is requested to make arrangements for Plaintiff to participate by telephone.

**I.     Background**

Plaintiff Tyrone Petties, currently an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against four nurses from Stateville Correctional Center. Plaintiff alleges that Defendants Heather Kits, R.N. ("Kits"), Tiffany Utke, L.P.N. ("Utke"), Wendy Dybas, R.N. ("Dybas"), and Tina Tomaras, L.P.N. ("Tomaras") committed retaliatory acts against him in violation of his First

1

Amendment rights. With the exception of the procedural history of this case, the Court takes the relevant facts from the parties' Local Rule 56.1 statements and exhibits thereto, [80], [88], and [90]. The following facts are undisputed unless otherwise noted.

On June 30, 2016,[1] Plaintiff filed his *pro se* complaint against Defendants Dybas, Kits, and Utke,[2] alleging that Defendants retaliated against him for having previously filed a lawsuit against two of Stateville's former Medical Directors (Imhotep Carter, M.D., and Saleh Obaisi, M.D. (deceased)). [1.] Based on the allegations in the original complaint, the Court permitted Plaintiff to proceed with his First Amendment retaliation claim against Defendants Dybas, Kits, and Utke. [5, at 3.] On or about April 27, 2018, Plaintiff filed an "amended complaint and supplemental complaint," which added additional factual allegations as well as an additional Defendant (Tomaras). [49.] Based on the allegations in the amended complaint, the Court permitted Plaintiff to proceed with his First Amendment retaliation claim—to the extent the claim was based on allegedly false disciplinary reports—against Defendants Dybas, Utke, Kits and Tomaras.[3] [52, at 3.]

Defendants Dybas, Kits, Utke, and Tomaras are nurses employed by Wexford Health Services Inc. ("Wexford"). [88, Statement of Additional Facts, at ¶ 3.] In 2012, Plaintiff filed a

---

[1] Plaintiff's complaint is dated June 30, 2016, and contains a certificate of service showing that Plaintiff placed his complaint in the institutional mail at Stateville Correctional Center for mailing on the same date. [1, at 14, 18.] The envelope that Plaintiff mailed his complaint in is postmarked August 3, 2016. [1-1.] The Court performed its initial review of Plaintiff's complaint on September 9, 2016 and instructed the Clerk to enter the complaint on the docket that same day. [5, 6.] It is unclear as to why it took more than a month for the complaint to reach the Court after Plaintiff placed it in the institutional on June 30, 2016. Nonetheless, in accordance with the prisoner mailbox rule, the Court considers the complaint filed as of June 30, 2016. See *Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (a plaintiff's *pro se* pleadings are deemed filed the date they are handed over to prison officials for mailing).

[2] The original complaint named nurses Wendy Dybas, Tiffany Utke, Heather Kits, and Dr. Obaisi as Defendants. [1, at 1.] Dr. Obaisi was dismissed in the Court's September 9, 2016 initial review order. [5, at 4.]

[3] The Court dismissed all other claims and Defendants in the amended complaint. [52, at 3-5.] The Court also concluded that Plaintiff failed to allege a colorable claim of retaliation based on verbal harassment and/or threats. *Id.*

2

lawsuit against former Medical Directors of Stateville—Imhotep Carter, M.D., and Saleh Obaisi, M.D. (deceased), Docket No. 12-cv-9353—regarding allegedly inadequate medical treatment for an Achilles tendon injury. [80, Statement of Facts, at ¶ 7.]

On February 28, 2014, Defendant Kits generated an Offender Disciplinary Report against Plaintiff. *Id*. at ¶ 8. The nature of the offense was listed as "Sexual Misconduct." *Id*. In this Report, Kits stated that she observed Utke ask for Plaintiff's arm to take his blood pressure. *Id*. Kits further stated that Plaintiff's left hand was in his pants at the time, and that she saw a creamy white substance on both of his hands after he removed his left hand from his pants. *Id*. Though Utke was listed as a witness on the February 28, 2014 Offender Disciplinary Report, Utke did not generate the February 28, 2014 Offender Disciplinary Report against Plaintiff. *Id*. at ¶ 12. Plaintiff was given six months in segregation as a result of the February 28, 2014 Offender Disciplinary Report. [88, Statement of Additional Facts, at ¶ 13.] On March 4, 2014, Plaintiff filed an Offender Grievance regarding the Disciplinary Report generated by Kits on February 28, 2014. [80, Statement of Facts, at ¶ 13.] In the Offender Grievance, Plaintiff explained that he had put his prescribed medication on his hand "in an attempt to show" Defendant Kits that it was not working. *Id*. He also requested that Kits and Utke be "investigated and fired." *Id.* The Offender Grievance is absent any indication that the February 28, 2014 Disciplinary Report generated by Kits had any connection to the 2012 lawsuit. *Id.*

On December 12, 2014, Dybas generated an Offender Disciplinary Report against Plaintiff. *Id*. at ¶ 14. The nature of the offense was listed as "Sexual Misconduct" and "Insolence." In this Report, Dybas stated that she observed Plaintiff "holding his shorts out while masturbating with [his] other hand. Ordered [inmate] Petties to stop. [Inmate] disobeyed

3

order." *Id*. Plaintiff denies that he violated any institutional rules and that he exposed himself or made any sexual movements. [88, Response to Statement of Facts, at ¶ 14.] Plaintiff was given three months in segregation as a result of Dybas' disciplinary report. [88, Statement of Additional Facts, at ¶ 14.] On January 2, 2015, Plaintiff filed an Offender Grievance regarding the Disciplinary Report generated by Dybas. [80, Statement of Facts, at ¶ 17.] The Offender Grievance is absent any indication that the December 12, 2014 Disciplinary Report generated by Dybas had any connection to the 2012 lawsuit. *Id*.

At his deposition, Plaintiff testified that he believed that Defendants' actions against him were retaliatory based on his perception that [Dr. Obaisi] gave Defendants a look indicating that they should go after Plaintiff. *Id*. at ¶ 18.[4] Plaintiff also testified that he believed that Defendants' knew about the 2012 lawsuit because they talk with each other about situations going on in the jailhouse. *Id*. at ¶ 21. Plaintiff further testified that he never actually heard Dr. Obaisi tell Defendants to retaliate against him, *id*. at ¶ 19, that Dr. Obaisi never threatened to retaliate against Plaintiff, *id*., and that he did not know whether Defendants spoke with Dr. Obaisi regarding the 2012 lawsuit. *Id*. at ¶ 22. Furthermore, Plaintiff testified that he did not know whether the alleged retaliatory acts were a "planned situation." *Id*. at ¶ 20.[5]

On May 21, 2016, Tomaras generated an Offender Disciplinary Report against Plaintiff.

---

[4] Plaintiff denies Defendants' Statement of Fact No. 18, asserting that he knew Defendants' retaliated against him because he overheard them saying that they would retaliate against him. [88, Response to Statement of Facts, at ¶ 17.] The Court recognizes that Plaintiff claims to have other reasons for believing that Defendants acted with a retaliatory motive, but Defendant's Statement of Fact No. 18 contains a direct quote from Plaintiff's deposition. Because Plaintiff has not offered any reason for the Court to question the accuracy of the transcript from Plaintiff's deposition, the Court deems Defendants' Statement of Fact No. 18 as an undisputed fact. The Court does the same with respect to other denials of Statements of Fact that merely quote from the transcript of Plaintiff's deposition.

[5] Although Defendants—in support of Statement of Fact No. 20—cited to the incorrect line numbers of Plaintiff's deposition transcript, Defendants later cited to the correct page number. [89, at 4.] The Court will not disregard Statement of Fact No. 20 because of such a minor error.

4

[80, Statement of Facts, at ¶ 25.] The nature of the offense was listed as "Insolence" and "Attempted Sexual Misconduct." *Id*. In this Report, Tomaras stated: "this nurse responded to a Code #3 on the South Yard. While I was walking with the inmates trying to assess my patient, [inmate] Petties #N52785 saw that I was distracted and intentionally stopped and turned around in front of me, causing me to run into him with some force[.]" *Id*. On May 30, 2016, the IDOC Adjustment Committee held a hearing regarding the May 21, 2016 Disciplinary Report generated by Tomaras and dismissed the charge, finding that the disciplinary report indicated that it was Tomaras who ran into Plaintiff—not vice versa. *Id*. at ¶ 28. Plaintiff did not receive any discipline in connection with the May 21, 2016 incident. *Id*. On June 8, 2016, Plaintiff filed an Offender Grievance regarding the Disciplinary Report issued by Tomaras. *Id*. at ¶ 29. The Offender Grievance contains no indication that the May 21, 2016 Disciplinary Report generated by Tomaras had any connection to the 2012 lawsuit. *Id*. At his deposition, Plaintiff testified that the only basis of his belief that Tomaras generated the May 21, 2016 Disciplinary Report against him is "because they all (the nurses) be together, they all talk together, and they all do things together, and that's how it is." *Id.* at ¶ 30.[6] Plaintiff also testified that he did not know if Dr. Obaisi ever discussed the 2012 lawsuit with Tomaras. *Id. * at ¶ 31.

Although the parties agree on many facts, there still are many facts in dispute. For example, the parties dispute whether Plaintiff committed that acts that served as the bases of the disciplinary reports issued by Defendants. [90, at ¶¶ 7-9.] The parties also dispute whether Defendants were aware of the 2012 lawsuit and whether the 2012 lawsuit was a motivating factor for Defendants' roles in the disciplinary reports issued against Plaintiff. *Id*. at ¶¶ 10-12,

---

[6] Again, although Plaintiff disputes this fact, Plaintiff has not given any reason for the Court to question the accuracy of the transcript from his deposition.

16-21.

## II. Legal Standard

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to evidence demonstrating a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) (citations omitted). Presented evidence must be competent evidence that would be admissible at trial. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citations omitted).

The moving party has the initial burden of showing there is no genuine dispute and he is entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)). If the moving party meets this burden, the non-moving party must respond with specific facts showing that the jury could find in his favor, and that there is a genuine dispute that needs to be adjudicated at trial. *Carmichael*, 605 F.3d at 460 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wheeler*, 539 F.3d at 634). A genuine dispute is one that could change the outcome of the suit, and is supported by evidence sufficient to allow a reasonable jury to return a favorable verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (citations omitted).

### III. Analysis

Defendants have moved to dismiss Plaintiff's First Amendment retaliation claim—Plaintiff's sole remaining claim. To prevail on a First Amendment retaliation claim, Plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Here, Defendants do not contest that Plaintiff's filing of the 2012 lawsuit against Drs. Obaisi and Imhotep is sufficient to establish that Plaintiff engaged in activity protected by the First Amendment. See *DeTomaso v. McGinnis*, 970 F.2d 211, 214 (7th Cir. 1992) ("Because the Constitution protects an inmate's access to the courts, prison officials may not retaliate against those who seek or obtain such access—whether the retaliation takes the form of withholding property or privileges does not matter." (citing *Haymes v. Montanye*, 547 F.2d 188 (2d Cir. 1976)).

Defendants argue, however, that they are entitled to summary judgment because (1) Plaintiff has not come forth with sufficient evidence to establish that the alleged retaliatory acts of the Defendants were severe enough that they would deter First Amendment activity; (2) Plaintiff has not come forth with sufficient evidence to establish that the purported retaliatory acts of the Defendants were motivated by the 2012 lawsuit; and (3) Plaintiff's retaliation claim against Defendants Kits and Utke is barred by the statute of limitations. Defendants further argue that even if Plaintiff's retaliation claim survives summary judgment, his claim for punitive

damages is unsubstantiated. [79, at 2.][7]

### A. Likely to Deter First Amendment Activity

Plaintiff's claim describes three separate instances of disciplinary action—two of which resulted in extended periods of segregation. To the extent Plaintiff's claim is based on the Disciplinary Report issued by Defendant Tomaras—a report that did not result in any discipline or negative consequences—Plaintiff's claim fails. *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009) ("A retaliatory disciplinary charge that is later dismissed is insufficient to serve as a basis of a § 1983 action."). Thus, Plaintiff cannot proceed on his First Amendment retaliation claim against Defendant Tomaras.

However, to the extent Plaintiff's claim is based on disciplinary reports that resulted in extended periods of segregation, Plaintiff has identified sufficient evidence for a jury to find that he suffered a deprivation that would likely deter future First Amendment activity. It is undisputed that Plaintiff was given six months segregation as a result of the disciplinary report issued by Defendant Kits, in support of which Defendant Utke acted as a witness. [88, at ¶ 13.] It also is undisputed that Plaintiff was given three months segregation as a result of the disciplinary report issued by Defendant Dybas. *Id*. at ¶ 14. Plaintiff represents that the living conditions in the segregation unit were deplorable. *Id*. at ¶ 15 (citingg 88, Ex. D, at ¶¶ 14-17). For example, he indicates that the unit was infested with vermin, the windows in the cell

---

[7] The parties also challenge each other's compliance with Local Rule 56.1 in many instances. However, many of the objections raised pursuant to Local Rule 56.1 are meritless. For example, Plaintiff argues in his memorandum of law that Defendants' Statement of Fact No. 1 is not supported by the cited deposition testimony [87, at 5], even though Statement of Fact No. 1 actually is supported by the cited deposition testimony. As discussed herein, the Court only has accepted facts as true when admitted or when properly supported by uncontroverted evidence. The Court therefore will not spend the time addressing each objection raised pursuant to Local Rule 56.1. Although the Court has discretion to require strict compliance with Rule 56 and Local Rule 56.1, the Court is not required to exercise that discretion. *Lumpkins-Benford v. Allstate Ins. Co.*, 567 F. App'x 452, 456 (7th Cir. 2014) ("[T]he district court has broad discretion to excuse noncompliance with local rules[.]" (citing *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.,* 733 F.3d 761, 770 (7th Cir. 2013))).

were broken and allowed cold air to blow into the cells, and the lights remained on for 24 hrs. [88, Ex. D, at ¶ 14.] He also indicates that the unit was "mostly filled" with mentally-ill inmates who "threw feces and urine on other inmates, and, [that] on one occasion, he was attacked with feces." *Id.* Furthermore, it is reasonable to infer that such extended periods of segregation are themselves distressing.

Defendants argue that—even assuming the disciplinary reports against Plaintiff were false—the filing of the false disciplinary reports did not rise to the level of actionable retaliation because Plaintiff ultimately was not "silenced" insofar as he continued to file grievances and lawsuits. [79, at 6.] However, "a retaliatory action need not actually deter the plaintiff from persisting with First Amendment activity; an objective test determines whether retaliatory actions would deter a person of 'ordinary firmness' from engaging in the protected activity." *McKinley v. Schoenbeck*, 2018 WL 1830942, at *3 (7th Cir. Apr. 17, 2018) (citing *Surita v. Hyde*, 665 F.3d 860, 878-79 (7th Cir. 2011)); see also *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) ("[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." (quoting it *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)). Here, a reasonable factfinder could conclude that unjustifiably being forced to spend approximately nine months in segregation would deter a person of ordinary firmness from filing future grievances or lawsuits.[8]

---

[8] Defendants also argue that Plaintiff cannot establish a First Amendment retaliation claim based on alleged harassment and/or threats. In his response, Plaintiff does not argue that such conduct serves as the basis of his First Amendment retaliation claim. Plaintiff correctly focused on the allegedly false disciplinary reports filed against him, as the Court already has concluded that Plaintiff failed to state a colorable First Amendment retaliation claim based on verbal harassment and/or threats. [52, at 3.] Indeed, the Seventh Circuit has held that isolated threats of violence by prison personnel do not amount to retaliation, *Antoine v. Uchtman*, 275 F. App'x 539, 541 (7th Cir. 2008); *Salem v. Spryes*, 2014 WL 2698586 (N.D. Ill. June 13, 2014), nor does ordinary verbal abuse/low-level

### B. Retaliatory Intent

Defendants also argue that Plaintiff has not come forth with sufficient evidence to show that the 2012 lawsuit was at least a motivating factor (*i.e.*, a sufficient condition) for the claimed retaliatory conduct. A plaintiff may demonstrate that his speech was a motivating factor behind the defendant's retaliatory actions by presenting direct or circumstantial evidence. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). However, a claim of retaliatory action must be supported by more than speculation. See *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008); see also *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 544 F.3d 752, 757 (7th Cir. 2008). Furthermore, "protected conduct cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected activity." *Morfin v. City of E. Chi.*, 349 F.3d 989, 1005 (7th Cir. 2003) (internal quotations and alterations omitted).

In support of their motion, Defendants argue that Plaintiff has failed to identify credible evidence sufficient to show (1) that Defendants were aware of the 2012 lawsuit, or (2) that the lawsuit served as motivation for Defendants to issue the disciplinary tickets at issue.[9] Defendants also have provided evidence to the contrary in the form of affidavits from the Defendants representing that they were unaware of any lawsuits or grievances filed by Plaintiff against any staff members of Stateville, including former Medical Directors Saleh Obaisi, M.D. and Imhotep Carter, M.D., prior to receiving notice of this lawsuit. [80-2, at ¶¶ 2-3 (Kits); 80-3, at ¶¶ 2-3 (Utke); 80-4, at ¶¶ 2-3 (Dybas); 80-5, at ¶¶ 2-3 (Tomaras).] Finally, Defendants have

---

harassment qualify, *Heard v. Hardy*, 2013 WL 3812102 (N.D. Ill. July 22, 2013) (overly-tightened handcuffs, making prisoner stand for hours in shower area and teasing him about his father's passing were not actionable retaliation).

[9] On summary judgment, "[t]he moving party has the burden of either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citing *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013)).

cited to Plaintiff's deposition, in which Plaintiff testified that he believed Defendants were aware of the 2012 lawsuit based on (1) conversations "going on in the jailhouse" among the nursing staff, and (2) a "look" that Dr. Obaisi had given them at one point in the presence of Plaintiff. [80, at ¶¶ 18, 21.] Defendants also point to the statement in Plaintiff's deposition that he did not know whether the alleged retaliatory acts were "planned situations," and that he never heard Dr. Obaisi tell the Defendants to retaliate against him. *Id*. at ¶¶ 19-20.

Plaintiff argues that there is sufficient evidence to find that his First Amendment activity was at least a motivating factor in Defendants' involvement in the allegedly false disciplinary reports against Plaintiff. To begin, Plaintiff suggests that the verbal harassment/threats and the timing of the disciplinary reports constitute evidence of retaliation. [87, at 16.] He also points to the issuance of the disciplinary reports—for offenses he claims he did not commit and which were issued by individuals who allegedly did not have authority to issue them—as evidence of retaliation. *Id.* In addition, Plaintiff submitted an affidavit averring that he personally heard Defendants Dybas, Kits, and Tomaras say that they were retaliating against Plaintiff because of the lawsuit Plaintiff filed against their boss Dr. Obaisi. [88, Ex. D, at ¶ 11.] Furthermore, Plaintiff submitted the affidavit of fellow inmate Seneca Smith, who avers that Defendants Kits and Dybas told him that they each generated false disciplinary reports against Plaintiff because of the lawsuit that Plaintiff filed against Dr. Obaisi. [88, Ex. C, at ¶¶ 7-9.] Mr. Smith further attests that he personally has spoken to all Defendants about false disciplinary reports that they generated against other inmates with similar allegations, noting that musturbation disciplinary reports are not usually dismissed and result in a long period of segregation. *Id*. at ¶ 10.

The timing of the alleged retaliatory conduct is insufficient to preclude summary

judgment in Defendants' favor. Suspicious timing alone does not support a reasonable inference of retaliation. *Dace*, 658 F. Supp. 2d at 881. Plaintiff "must produce evidence that somehow ties the adverse [action] to [his] protected actions. The fact that one event preceded another does nothing to prove the first event caused the second." *Id.* (internal citation omitted); *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) ("mere temporal proximity is not enough to establish a genuine issue of material fact" (internal quotation omitted)). Furthermore, Plaintiff has not provided a chronology of events that even would allow the Court to conclude that the timing of Defendants' conduct was suspicious.[10]

Still, Plaintiff has submitted affidavits that—if credited—constitute sufficient evidence for a jury to find that Plaintiff's First Amendment activity was at least a motivating factor in some of the alleged retaliatory conduct. In Plaintiff's affidavit—which Plaintiff relies upon to deny many of Defendants' factual assertions—Plaintiff avers that he did not engage in the misconduct alleged in the disciplinary reports. [88, Ex. D, at ¶¶ 8-11.] Plaintiff further avers that he overhead Defendants Kits and Dybas say that they were retaliating against Plaintiff because of the lawsuit he filed against Dr. Obaisi. *Id.* at ¶ 11.

Defendants argue that Plaintiff's declaration should be disregarded because—according to Defendants—Plaintiff's declaration stands in direct contradiction to his deposition testimony. To the extent that Plaintiff's declaration directly contradicts his deposition testimony, the Court agrees that it is appropriate to disregard contradictory portions of Plaintiff's declaration. See *United States v. Funds in Amount of One Hundred Thousand One Hundred & Twenty Dollars ($100,120.00)*, 730 F.3d 711, 718 (7th Cir. 2013). For example, Plaintiff relies on his

---

[10] Defendants emphasize that Plaintiff's 2012 lawsuit was filed approximately four years before this lawsuit. However, Plaintiff has indicated that the retaliation started to occur after Dr. Obaisi was deposed. Furthermore, the retaliatory conduct at issue occurred in 2014, not in 2016 when the lawsuit was filed.

declaration to deny that "he admitted that he did not know whether the alleged retaliatory acts were a 'planned situation.'" [88, Response to Statement of Facts, at ¶ 20.] But Plaintiff expressly testified to the contrary at his deposition, stating that he couldn't say whether the alleged retaliation "was a plan, a planned situation." [80, at ¶ 20.]

Plaintiff also relies on his declaration to assert that Defendants Kits and Dybas generated disciplinary reports against Plaintiff in retaliation to Plaintiff's 2012 lawsuit [88, Statement of Additional Facts, at ¶ 10], averring that he personally heard Defendants Kits and Dybas say that they were retaliating against Plaintiff because of his lawsuit. [88, Ex. D, at ¶ 11.] But when asked about any statements Defendants made about his lawsuit, Plaintiff did not mention these alleged statements. [80-1, Ex. 1 at 69:8-75:13.]

However, not all of the statements in Plaintiff's declaration contradict his own deposition testimony. Plaintiff denied Defendants assertion that they did not know about the 2012 lawsuit until they received notice of the above-captioned lawsuit on the ground that Plaintiff had heard Defendants discuss the lawsuit. [88, Response to Statement of Facts, at ¶ 40.] This is consistent with Plaintiff's deposition; Plaintiff testified that he heard Defendants discussing the lawsuit and other grievance at various times. [See, *e.g.*, 80-1, Ex. 1 at 69:8-75:13.] Defendants point to Plaintiff's testimony that he believed that Defendants knew about the lawsuit because "that's all they do is talk about situations that's going on in the jailhouse." [80, Statement of Facts, at ¶ 21.] But Plaintiff did not testify that was his ***only*** reason for thinking that Defendants knew about the lawsuit. Given that Plaintiff testified that he heard Defendants discussing the lawsuit and other grievance at various times, it would be inappropriate to interpret Plaintiff's response to one question so narrowly. [See, *e.g.,* 80-1, Ex. 1, at 69:8-75:13.] Although Plaintiff also

13

testified that he did not know whether Defendants spoke with Dr. Obaisi about the 2012 lawsuit [80, at ¶¶ 22, 31], it does not matter how Defendants knew of the lawsuit. The relevant question is whether Defendants knew about the lawsuit before the alleged retaliatory conduct. Plaintiff's testimony—if credited—indicates they did. Plaintiff therefore has identified a genuine dispute regarding whether Defendants knew about the lawsuit and other grievances when they engaged in the alleged retaliatory conduct.

The affidavit of Plaintiff's fellow inmate Seneca Smith also supports the existence of a genuine dispute regarding whether Plaintiff's lawsuit was at least a motivating factor in the retaliatory conduct allegedly committed by Defendants Dybas, Kits, and Utke. Seneca Smith avers that he personally spoke with Defendants Dybas, Kits, and Utke about the disciplinary reports against Plaintiff, and that Defendants Kits and Dybas told Mr. Smith that they each generated a false disciplinary report against Plaintiff because Plaintiff filed a false lawsuit against Dr. Obaisi.[11] [88, Ex. C, at ¶¶ 7-9.] Defendants argue that the declaration is not admissible on summary judgment because it solely is comprised of inadmissible hearsay. "[T]o be considered on summary judgment, evidence must be admissible at trial, though 'the form produced at summary judgment need not be admissible.'" *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir.), cert. denied, 137 S. Ct. 493 (2016) (citing *Wragg v. Village of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010)). Thus, affidavits and declarations are admissible on summary judgment as long as the testimony contained in the affidavit would be admissible at trial. *Id*.

---

[11] Mr. Smith further represents that he spoke with Defendants Kits, Dybas, Utke, and Tomaras about other false disciplinary reports that they generated. Although Mr. Smith does not say that Defendant Utke told him that she acted as a witness to the February 28, 2014 Offender Disciplinary Report because of Plaintiff's 2012 lawsuit and/or grievances, such an inference could be made based on the fact that Kits admitted the disciplinary report that she issued with Utke as a witness was false (a disputed fact) and the fact that Defendant Utke expressed frustration that Plaintiff filed his lawsuit and/or grievances. [80-1, Ex. 1, at 72:15-22.]

Although Mr. Smith's declaration references statements made by Defendants Kits and Dybas, the statements do not constitute hearsay because they are statements of a party opponent. Fed. R. Evid. 801(d)(2)(A); see also *Cairel*, 821 F.3d at 830 (holding that officer affidavits were properly considered on summary judgment because the third-party statements contained in the affidavits were not offered for the truth of the matter asserted and therefore did not constitute hearsay).

Defendants also argue that Mr. Smith's testimony should be excluded because Mr. Smith was never disclosed as a witness pursuant to Federal Rule of Civil Procedure 26. [89, at 6.] However, it is unclear to which disclosure obligation Defendants are referring. Because Plaintiff is in the custody of a state and proceeding without an attorney, this proceeding is exempt from the initial disclosure requirements of Rule 26(a). Fed. R. Civ. P. 26(a)(B)(iv). Furthermore, because the Court has not set a different deadline for pretrial disclosures, Plaintiff has until 30 days before trial to submit his pretrial disclosures pursuant to Rule 26(a)(3). The affidavit of Mr. Smith therefore is admissible on summary judgment.[12]

The upshot of the foregoing discussion is that Plaintiff has submitted sufficient evidence to establish a genuine dispute of material fact regarding whether the alleged retaliatory conduct was a motivating factor in the challenged conduct for Defendants Dybas, Kits, and Utke. Plaintiff has not, however, submitted sufficient evidence to establish a genuine dispute of material fact as to Defendant Tomaras on that issue. At Plaintiff's deposition, he testified that

---

[12] Defendants also assert that Mr. Smith's declaration appears to have been drafted by Plaintiff himself. The Court will not discredit a declaration simply because the handwriting in the declaration is similar to the handwriting in Plaintiff's own submissions. Defendants have not submitted any evidence showing that Plaintiff drafted and signed the declaration. Furthermore, the Court notes that it also is possible that the same person who drafted Mr. Smith's declaration also drafted Plaintiff's submissions. Prisoners—who often do not have access to computers for the purposes of drafting court submissions—sometimes request assistance from individuals with legible handwriting.

15

his "*only basis* for believing that Nurse Tomaras was acting in retaliation against [him] was the fact that she talks with other nurses that are defendants in this case."[13] [80-1, Ex. 1, at 131:15-19 (emphasis added); see also 80, Statement of Facts, at ¶ 30.] Furthermore, Defendant Tomaras is not mentioned at all in Mr. Smith's declaration. A claim of retaliatory action must be supported by more than speculation. See *Springer*, 518 F.3d at 484. Here, Plaintiff has not presented sufficient evidence for a jury to find that Plaintiff's First Amendment activity was a motivating factor in Defendant Tomaras filing a disciplinary report against Plaintiff or that Tomaras's alleged retaliatory conduct would be likely to deter future First Amendment activity. Accordingly, the Court grants summary judgment in favor of Defendant Tomaras on Plaintiff's First Amendment retaliation claim against her.

As to the claims against the other Defendants, there are many reasons to question the credibility of the evidence offered by Plaintiff. For example, Plaintiff does not dispute that he never mentioned the 2012 lawsuit (or any retaliatory intent related thereto) in the offender grievances that he filed against Defendants. [88, Response to Statement of Facts, at ¶13, ¶17, ¶29.] Nor did he mention Defendants' alleged retaliatory intent in his original complaint. *Id*. at ¶ 32. Similarly, Plaintiff did not mention in his deposition that another inmate—Mr. Smith—heard Defendants Dybas, Kits, and Utke discuss Plaintiff's allegedly false disciplinary reports. Nevertheless, although Plaintiff's omissions might undermine the credibility of his evidence, the

---

[13] When Plaintiff was asked the basis of his allegation that Defendants were aware of the 2012 lawsuit at his deposition, Plaintiff testified that he believed that they knew "because that's all they do is talk about situations going on in the jailhouse." [80, Statement of Facts, at ¶ 21.] However, Plaintiff did not testify that his belief that the nurses discussed what was happening in the jail was his *only* basis for believing that Defendants acted with a retaliatory motive. Similarly, at his deposition, Plaintiff testified that the basis for his belief that Defendants actions against him were retaliatory was because "when [he] was going to [Dr. Obaisi], it seem[ed] to [Plaintiff] that the doctor * * * was definitely looking towards [the nurses] and [Plaintiff] in a way that he's saying, get him." *Id*. at ¶ 18.] But, again, Plaintiff did not say that this fact was his *only* basis for believing that Defendants acted in retaliation to Plaintiff's lawsuit and/or grievances.

Court cannot make credibility determinations on summary judgment.[14] *Omnicare, Inc.*, 629 F.3d at 705.

### C. Statute of Limitations

Defendants Kits and Utke argue that Plaintiff's First Amendment retaliation claim against them is time-barred and therefore should be dismissed. Plaintiff's claim is governed by Illinois' two-year statute of limitations for personal injury actions, but federal accrual rules apply to these claims. *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016). In the present matter, the only retaliatory act allegedly committed by Defendants Kits and Utke is their involvement in the February 28, 2014 Disciplinary Report, which was generated by Kits and witnessed by Utke.

Plaintiff does not dispute that his claims were not filed within the applicable two-year statute of limitations period. Plaintiff argues, however, that the statute of limitations should be tolled while he exhausted his administrative remedies against these Defendants. The Seventh Circuit agrees that federal courts must toll the statute of limitations period while an inmate exhausts his administrative grievances. *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). The tolling period starts when the prisoner files his grievance and ends when the administrative review process is over. *Hatch v. Briley*, 230 Fed. App'x 598, 599 (7th Cir. 2007).

Because Defendants did not set forth the date on which Plaintiff exhausted his administrative remedies in their motion for summary judgment, Plaintiff argues that summary judgment is inappropriate. [87, at 20.] However, it is Plaintiff's burden to show that he is entitled to equitable tolling. *Stark v. Dynascan Corp.*, 902 F.2d 549, 551 (7th Cir. 1990) ("On a

---

[14] Defendants repeatedly argue that Plaintiff must produce "credible" evidence on which a reasonable jury could rely. [See, e.g., 79, at 9 (citing *Porter v. City of Chicago*, 700 F.3d 944, 946 (7th Cir. 2012)).] However, Plaintiff only is required to produce admissible evidence. *Cairel*, 821 F.3d at 830. Credibility of the evidence is left to the trier of fact.

motion for summary judgment, the burden is on the plaintiff to present facts which, if true, would justify equitable tolling of the statute of limitations."); see also *Douglas v. Potter*, 268 F. App'x 468, 471 (7th Cir. 2008) (recognizing same). Plaintiff did not submit any supporting documents relating to his equitable tolling argument.

In their reply, Defendants attached the Illinois Department of Corrections' denial of Plaintiff's grievance, in which the Chief Administrative Officer at Stateville concurred on April 23, 2014. [89-1.] There is no evidence before the Court indicating that Plaintiff attempted to appeal the denial of his grievance to the Illinois Department of Corrections Administrative Review Board. Thus, based on the evidence before the Court, the statute of limitations on Plaintiff's claims against Defendants Kits and Utke began to run on April 23, 2014. Because Plaintiff's complaint was not signed until June 30, 2016 and was not filed until September 9, 2016, Plaintiff's claim against Defendants Kits and Utke is barred by the two-year statute of limitations.

      **D.**      **Punitive Damages**

Finally, Defendants argue that they are entitled to summary judgment on Plaintiff's punitive damages claim because Plaintiff has not shown that Defendant's conduct was motived by evil motive or intent or that their conduct involved a reckless or callous indifference to Plaintiff's federally protected rights. Under Section 1983, punitive damages are appropriate when a defendant acted wantonly and willfully or was motivated by ill-will or a desire to injure. *Hendrickson v. Cooper*, 589 F.3d 887, 894 (7th Cir. 2009) (citations and internal quotation marks omitted); *Marshall v. Teske*, 284 F.3d 765, 772 (7th Cir. 2002) ("A jury may award punitive damages in a § 1983 case if it finds that the defendants' conduct was motivated by evil

intent or callous indifference to the plaintiff's federally protected rights.").

Defendants argue that Plaintiff cannot make such a showing here because the "undisputed evidentiary record reveals that Defendants issued disciplinary tickets against Plaintiff based upon their observation of that they believed to be a violation of Stateville rules" and that it "was their job and responsibility to generate an Offender Disciplinary Report in those instances." [79, at 11.] However, as discussed above, that fact is disputed. Accordingly, Defendants' request for summary judgment on Plaintiff's punitive damages claim is denied.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [78] is granted in part and denied in part. Summary judgment is entered in favor of Defendants Utke, Kits, and Tomaras. Summary judgment is denied as to Defendant Dybas. The case is set for further status on September 6, 2018 at 10:00 a.m.

Dated: August 20, 2018

Robert M. Dow, Jr.
United States District Judge